IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
MARYLAND

| | |
|---|---|
| BRYAN LEVY, *et al.*, | * |
| Plaintiffs, | * |
| v. | * Case No.: 1:21-1767-CCB |
| BOARD OF EDUCATION OF ANNE ARUNDEL COUNTY, *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \*

## CONSENT DECREE

### I. Background

1. This Consent Decree resolves a civil action brought by Plaintiffs Bryan Levy, Tanya Levy and the Estate of Bowen Levy (the "Plaintiffs") against Defendants, Natalie Marston and Board of Education of Anne Arundel County, Maryland (the "Defendants"), for money damages and certain injunctive relief resulting from the death of Bowen Levy on November 10, 2019.

2. In the Complaint, the Plaintiffs allege that the Board of Education of Anne Arundel County caused Bowen's death by allowing inedible objects within his reach, despite having knowledge of his acute pica disorder, and by a failure to properly staff his classroom on the afternoon of November 5, 2019 in violation of Title II of the ADA and Section 504 of the Rehabilitation Act. The Plaintiffs also asserted claims of wrongful death, survivorship, and violations of constitutional rights via 42 U.S.C. § 1983.

3. The Plaintiffs and the Defendants (collectively, "the parties") agree that it is in the parties' best interests, to resolve this lawsuit on mutually agreeable terms without further litigation. Accordingly, the parties agree to the entry of this Consent Decree without trial or further adjudication of any issues of fact or law raised in the Plaintiffs' Complaint. Further, the parties agree that there has been no adjudication as to the merits of any of the claims raised herein and the fact that the Board of Education of Anne Arundel County has entered into this Consent Decree should in no way be considered as evidence of guilt or liability that it has violated the law in any way. The parties agree that the terms of this Consent Decree are limited to, and apply only to, the Board of Education of Anne Arundel County. From this point forward "Defendant" refers to the Board of Education of Anne Arundel County, Maryland only.

Accordingly, the parties hereby AGREE and the Court expressly APPROVES, ENTERS, AND ORDERS THE FOLLOWING:

## II. Injunctive Relief

4. The Defendant will implement a Pica Safety Protocol ("PSP") for all students who have a medical diagnosis of acute pica, and in compliance with the student's IEP/504 Plan and all applicable special education laws. The Defendant will provide training related to the PSP to all AACPS staff who work with a student subject to the PSP. This PSP shall include:

   1) Visually inspecting all areas where PSP students frequent to ensure non-edible items are not accessible by PSP students;
   2) Routinely vacuuming or sweeping the areas to remove items on the floor;
   3) Placing locks on cabinets, closets and doors that contain possible pica objects;
   4) Providing access to pica-acceptable items during down times;
   5) Blocking PSP students engaged in pica behavior (blocking is a strategy involving placing your hand on top of the student's hand to prevent the student from placing the non-food item into the their mouth);
   6) 1:1 supervision of any student subject to the PSP, and whose IEP/504 Plan stipulates to supervision in accordance with all applicable special education laws; and
   7.) Documentation of Pica-related incidents for PSP students, kept in accordance with each student's IEP/504 Plan and in compliance with all applicable special education laws.

5. The Defendant will provide special education substitute staff vacancy data from its special education developmental centers to the Plaintiffs quarterly. The data shall be produced in the form it is kept by the Defendant in the ordinary course of business, with redactions made to any employee names and the type of leave utilized. Delivery of the data reports to the Plaintiffs can be accomplished by electronic mail to blevy@bohancontracting.com. The Defendant will provide this data to a workgroup of the Special Education Citizen Advisory Committee, a partnership between parents, families, community leaders, advocates, educators and administrators. The workgroup will focus on specific staffing shortage and special education substitute issues, including improved recruitment and compensation for substitutes, aides, paraprofessionals and other staff that provide supervision of disabled students.

6. Within seven (7) days of the effective date of this Consent Decree, the Defendant shall release a public statement containing an accounting of the events that led to Bowen's death. A copy of the statement is attached hereto as **Exhibit A**.

### III. Specific Remedial Relief

7. Within thirty (30) days of the effective date of this Consent Decree, the Defendant shall pay the Plaintiffs a total monetary award of Two Million Five Hundred Thousand Dollars ($2,500,000), which is designated as compensatory damages, and is inclusive of all costs and attorneys' fees. In exchange for this payment, the Plaintiffs will provide an executed settlement agreement and release of liability to the Defendant, its employees, agents and insureds, a copy of which is attached as **Exhibit B**.

### VI. Implementation and Enforcement

8. Failure by the Plaintiffs to enforce any provision of this Consent Decree shall not be construed as a waiver of the Plaintiffs' right to enforce any provisions of this Consent Decree.

9. If any term of this Consent Decree is determined by any court to be unenforceable, the other terms of this Consent Decree shall nonetheless remain in full force and effect.

10. The Plaintiffs may review compliance with this Consent Decree at any time, subject to the applicable laws concerning the privacy of student records. If the Plaintiffs believe that this Consent Decree or any portion of it has been violated, they will communicate their concerns to the Defendant and the parties will attempt to resolve those concerns in good faith. Defendant will have thirty (30) days from the date it receives notification of an alleged breach of this Consent Decree to resolve the Plaintiffs' concerns. If the concerns cannot be resolved after that time, the parties must engage in alternative dispute resolution prior to the filing of any motion for contempt or taking any other enforcement action.

11. This Consent Decree shall be binding upon the Defendant, its agents, and employees.

12. A signatory to this document in a representative capacity for Defendant represents that he or she is authorized to bind Defendant to this Consent Decree.

13. This Consent Decree constitutes the entire agreement between the Plaintiffs and Defendant on the matters raised herein and no other statement, promise, or agreement, either written or oral, made by any party or agents of any party, that is not contained in this written Consent Decree, including its attachments, shall be enforceable.

14. This Consent Decree does not affect Defendant's continuing responsibility to comply with all aspects of the ADA and Section 504 of the Rehabilitation Act.

15. The parties agree that, as of the date of entry of this Consent Decree, litigation is not "reasonably foreseeable" concerning the matters described in paragraphs (1)-(3). To the extent that either party previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described in paragraphs

(1)-(3), the party is no longer required to maintain such a litigation hold. Nothing in this paragraph relieves either party of any other obligations imposed by this Consent Decree.

16. The effective date of this Consent Decree is the date the Court enters the Consent Decree.

17. The duration of this Consent Decree will be three (3) years from the effective date.

SO ORDERED this _____ day of _____, 2022.

AGREED AND CONSENTED TO:

_____
Bryan Levy

_____
Tanya Levy

_____
Estate of Bowen Levy

*Plaintiffs*

_____
Dr. Joanna Tobin
President, Board of Education
of Anne Arundel County

*Defendant*

_____
Timothy F. Maloney, Esq
Matthew Bryant, Esq.
Alyse Prawde, Esq.
David Simpson, Esq.

*Attorneys for Plaintiffs*

_____
Philip E. Culpepper, Esq.
M. Brooke McKay, Esq.

*Attorneys for Defendants*

May 4, 2022
_____
Date

_____
Catherine Blake
District Judge
District of Maryland

{00358186.DOCX; 1}

4

**EXHIBIT A**

STATEMENT FROM BOARD PRESIDENT JOANNA TOBIN AND SUPERINTENDENT
GEORGE ARLOTTO REGARDING SETTLEMENT OF BOWEN LEVY CASE

On behalf of the Board of Education, the dedicated and passionate staff of Central Special School, and our entire school system, we again express our profound sorrow and regret for the loss of Bowen Levy, a 17-year-old student at Central Special School, on November 10, 2019.

Bowen's death has had an enormous impact on many, but nowhere has that impact been more massive than on his beloved family. We recognize that nothing that occurs from here forward will ever fill the void in their lives.

Bowen Levy's death was preventable. He should not have died. The school system is committed to working with the Levy family and the community to make sure no student is ever placed at risk like Bowen was on November 5, 2019.

To be clear, AACPS fully cooperated with both investigating agencies: the Anne Arundel County Department of Social Services and the Anne Arundel County Police Department. AACPS also conducted its own review of the circumstances that contributed to Bowen's death. The Department of Social Services has made a finding of "neglect" on the part of the school system and that Bowen died "as a result of the systemic failure at Central Special School." AACPS did not contest the findings of the Department of Social Services concerning this matter.

Bowen had special needs, including autism (for which he had an Individualized Education Plan, or IEP), and pica, a disorder that manifests itself by the compulsive swallowing and eating of substances or objects that have no nutritional value. School system staff had nurtured and cared for Bowen since he was 3 years old, and our team had considerable and documented knowledge and experience with Bowen's pica and its deadly risk to him. Our team was aware of the need to carefully monitor Bowen during the school day to prevent him from putting objects in his mouth.

The school system has entered into a settlement of the pending litigation in Maryland federal court with the Levy family over Bowen's death. As part of the settlement, the school system today provides the following public accounting of the events that led to Bowen's death:

Bowen's classroom at Central Special was understaffed at the time the afternoon incident took place on November 5, 2019. Bowen's teacher was on leave for the afternoon and two of the Temporary Support Assistants (TSAs) who regularly provided supervision for Bowen and the other students in the class were assisting another student in a different area of the building. A third TSA was absent. A permanent, building-based substitute assumed the role of teacher in the afternoon and two high school student volunteers were present in the classroom.

{00358172.DOCX; 1}

**EXHIBIT A**

Earlier that day a Staff member had taken a rubber glove from Bowen from his mouth, a life threatening event. Staff members at AACPS special centers are in constant need of gloves to perform their duties throughout the day, and the gloves remained visible and accessible to Bowen on the afternoon of November 5, 2019. We believe that is how Bowen accessed the glove that he swallowed later in the day.

Bowen began to choke on the glove in the classroom shortly before 3:10 p.m. on November 5, 2019. The substitute, who was in the classroom with seven disabled students and two volunteers, saw Bowen making a "gagging motion" and immediately took him to the health room.

The school called 911 and indicated that Bowen was not breathing. EMS arrived to Central Special and began emergency care prior to transporting Bowen to Anne Arundel Medical Center. Bowen was deprived of oxygen for 15 minutes. Bowen was later moved to Johns Hopkins Hospital in Baltimore, Maryland. He died five days later.

Our school system takes the Department of Social Service's finding of neglect extremely seriously. We have worked diligently since November 5, 2019, to make changes and institute reforms designed to prevent such tragic accidents from ever occurring again. Our school system has taken steps and is committed to further enhancements to help ensure that no student is ever placed at risk as Bowen was in 2019.

As a result of this tragedy, the Board created 32 new special education positions, including 11 permanent substitutes, 12 teaching assistants, and 9 teachers. All of those positions have been allocated to our three developmental centers to address the ongoing staffing shortages which have existed in the school system and throughout the country. The school system has also implemented protocols that call for the converting of some student in-person instruction to virtual instruction on days where insufficient staffing exists to help ensure adequate classroom coverage throughout each school day.

As part of this settlement, AACPS is entering into a consent decree with the Levy family in the Federal litigation, which will include the following:

- AACPS will implement a Pica Safety Protocol ("PSP") for all student who have a medical diagnosis of acute pica, and in compliance with the student's IEP/504 Plan and all applicable special education laws. AACPS will provide training related to the PSP to all AACPS staff who work with a student subject to the PSP. This PSP shall include:
    1) Visually inspecting all areas where PSP students frequent to ensure non-edible items are not accessible by PSP students;
    2) Routinely vacuuming or sweeping the areas to remove items on the floor;
    3) Placing locks on cabinets, closets and doors that contain possible pica objects;
    4) Providing access to pica-acceptable items during down times;

{00358172.DOCX; 1}

> 5) Blocking PSP students engaged in pica behavior (blocking is a strategy involving placing your hand on top of the student's hand to prevent the student from placing the non-food item into the their mouth);
> 6) 1:1 supervision of any student subject to the PSP, and whose IEP/504 Plan stipulates to supervision in accordance with all applicable special education laws; and
> 7.) Documentation of Pica-related incidents for PSP students, kept in accordance with each students IEP/504 Plan and in compliance with all applicable special education laws.

- The Special Education Citizen Advisory Committee ("SECAC"), a partnership between parents, families, community leaders, advocates, educators and administrators, will have a working group focusing on specific staffing shortage and special education substitute issues, including improved recruitment and compensation for substitutes, aides, paraprofessionals and other staff that provide supervision of disabled students, and a special track to add properly trained substitutes (this includes teachers and other staff that provide supervision of disabled students) with clear and transparent processes and procedures to ensure adequate substitutes for special education.

As part of the settlement agreement, AACPS has agreed to pay the Levy family $2.5 million to resolve the damage claims in the Federal litigation.

Those who cared so deeply for Bowen, most especially his family but also the devoted Central Special educators and staff, will never fully recover from this tragic loss. We believe that the changes that have and will come about as a result of Bowen's death will make the educational environment safer for all students.

######

**EXHIBIT B**

## SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE (hereinafter the "Release") is executed on this _____ day of _____, 2022 by Bryan Levy, Tanya Levy, and the Estate of Bowen Levy, (hereinafter collectively referred to as "Releasors"), and Natalie Marston and the Board of Education for Anne Arundel County, (hereinafter referred to collectively as the "Releasees").

1. In consideration of payment of Two Million Five Hundred Thousand and 00/100 Dollars ($2,500,000) to Releasors (the "Payment"), and entry of the consent decree by the United States District Court for the District of Maryland in the case of *Bryan Levy, et al. v. Board of Education, et al.* Case No. 1:21-cv-01767-CCB (the "Consent Decree"), Releasors, for themselves, their legal representative, heirs, insureds, successors and assigns, release and forever discharge the Releasees, their legal representatives, heirs, successors, assigns, insurers, servants, agents, subsidiaries, affiliates, officers, directors and employees, and any and all other persons, firms, corporations, associations, both known and unknown, whether herein named or referred to or not from any and all claims, actions, causes of actions, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which Releasors or their insureds now have or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen, personal or bodily injury, property damage, and consequences thereof resulting or to result from the accident, incident, casualty, loss or event that occurred on or about November 5, 2019, all as more particularly described in the Complaint and

{00359107.DOCX; 1}

1


BL ___
TL ___
EBL ___

**EXHIBIT B**

all amendments thereto filed in the case captioned as *Levy, et al v. Board of Education, et al.*, Case No. 1:21-cv-01767-CCB in the United States District Court for the District of Maryland, and Case No. C-02-CV-21-000119 in the Circuit Court for Anne Arundel County, Maryland (the "Litigation" or "Occurrence").

2. In addition, in consideration of the Payment and entry of the Consent Decree, Releasors hereby agree, for themselves, their heirs, executors, administrators, successors, and assigns, to dismiss the Litigation with prejudice, if it has not yet been dismissed, so that the entire Litigation is concluded upon execution of this Release, notwithstanding the continuing terms of the Consent Decree. Releasors additionally further covenant and promise never to institute any suit, action at law and/or equity, claim, cross-claim, third-party claim, and/or counter-claim against the Releasees and their insurers, agents, or employees, by reason of any claim now existent, or which may be acquired relating to the accident, incident, casualty, loss or event described in the Litigation and all amendments thereto filed in the Litigation, except as explicitly provided for in the Consent Decree.

3. In addition, and in consideration of the Payment and entry of the Consent Decree by the United States District Court, Releasors agree to indemnify and hold forever harmless the Releasees against any and all further actions, causes of action, suits, rights, judgments, claims, damages, demands, costs, expenses, loss of services, subrogation interest, liens, known or unknown, that may hereafter at any time be made or brought, either directly or indirectly, for the injuries and/or damages suffered or claimed to be have arisen out of or from the Occurrence, and including the obligation to provide a defense and pay such costs of defense, including attorney

{00359107.DOCX; 1}

2


BL
TL  JL
EBL

**EXHIBIT B**

fees, arising out of any such further or other claims, cross-claims, third-party claims, demands, liens or causes of action of any kind whatsoever. This specifically includes, but is not limited to, any claims for payment of any medical bills, liens, government liens, and subrogation claims, such that the Releasees shall never have to pay any sums in addition to the Payment, and which is being advanced with the understanding that it and the entry of the Consent Decree resolve any and all claims whatsoever against the parties and entities being released and indemnified.

4. It is further understood and agreed that this settlement is the compromise of disputed claims, and that the Payment made and releases given are not to be construed as an admission of liability on the part of the party or parties hereby released and that the parties deny liability to each other and intend merely to avoid litigation and buy their peace.

5. It is expressly understood that if any provision of this document is found to be invalid or unenforceable, all other provisions shall nevertheless continue in full force and effect.

6. This Release shall not be construed against the party that prepared it, and shall be construed as if all parties prepared it. This Release shall be construed and enforced in accordance with the laws of the State of Maryland.

7. Releasors hereto agrees that no modification, waiver, amendment or discharge of this Release shall be valid unless it is in writing and signed by the Releasees.

8. The undersigned parties further declare and represent that no promise, inducement, or agreement not herein expressed has been made and that this Release contains the entire agreement between the parties hereto and that the terms of this Release are contractual and not a mere recital.

{00359107.DOCX; 1}

3


BL
TL
EBL

**EXHIBIT B**

THE UNDERSIGNED HAS READ THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE AND EACH AND EVERY PAGE THEREOF AND FULLY UNDERSTANDS IT.

WITNESS my hand and seal this _____ day of _____, 2022.

By: _____ (SEAL)
    Bryan Levy

_____ (SEAL)
Tanya Levy

_____ (SEAL)
Estate of Bowen Levy

{00359107.DOCX; 1}

4



BL
TL
EBL